Good morning. May it please the Court. My name is Matthew Pruden, and I represent Nicholas Ragin in this matter. Your Honors, back in 2004, Mr. Ragin was charged in a drug conspiracy, a conspiracy against the United States, and a conspiracy involving a prostitution ring. He went to trial, was convicted on all counts with which he was charged, and was then sentenced to 30 years. And currently, Your Honors, he's in the Bureau of Prisons serving a 30-year sentence. Now, subsequent to his conviction, he filed a 2255 motion. He alleged numerous things, but there's really one thing at issue today, and that is he alleged that his lawyer, his trial counsel, fell asleep during trial. We later had an evidentiary hearing about that a year ago, approximately seven years after the trial took place. So what we have here, the issue to focus on here, is whether his counsel was ineffective in violation of a Sixth Amendment right to effective assistance of counsel for falling asleep at trial. Now, one thing that I want to point out is, generally speaking, these types of matters are reviewed through the analysis set forth by the Supreme Court in Strickland v. Washington, and that is a determination of whether counsel's performance was deficient, and whether that deficient performance prejudiced that lawyer's client. Now, I don't think there's any argument here that falling asleep during trial is a deficient performance. The issue that we have here is an issue regarding prejudice. And going to Strickland, I do just want to read one That seems to me you have to take one of two approaches, or both. Either you have to argue that falling asleep for even a second, it leads to presumed prejudice, or you have to argue that this is clearly erroneous factual finding. That's correct. Is that correct? That is correct, Your Honor. Which do you? And, Your Honor, it is the second thing that I'm arguing here today. You're not arguing the first. That's correct, Your Honor. Because, OK, so you just are here arguing to us. Would I be correct to say that you would find generally acceptable what other courts have looked at and said? Falling asleep alone is not enough to get presumed prejudice under Strickland. But certainly, some formulation of falling asleep for substantial periods of time would be presumed prejudice. Well, Your Honor, let me answer that in two ways. First of all, Is that correct? That's correct, Your Honor. OK. So in this case, then, you want to narrow the focus down to you think that on this record, court held an evidentiary hearing and explained its decision and found, as a matter of fact, that the client, I mean the lawyer, had not been asleep for substantial portions, correct? That is correct, Your Honor. You just think that's clearly erroneous? That's correct, Your Honor. That is the main focus here. I do want to address one thing you said, Your Honor. That is the question asked, if you fall asleep for one second, is that enough to presume prejudice? Obviously, in doing my research, it did not appear that the Fourth Circuit had addressed that matter. Has any other court accepted that view? No other court has accepted that view, Your Honor. Other courts have said that it requires substantial or not insubstantial portions of trial where the trial lawyer slept, Your Honor. Unfortunately for you, it's undisputed that he fell asleep for more than one second. That's correct, Your Honor. On more than one occasion. That is correct. More than one day. That is correct. Observed by more than one or two people. That is correct, Your Honor. As commented on by more than one or two judges. That's also correct, Your Honor. And Your Honor, going to that, let me move forward then with the facts of the case. I do, however, just want to point out just one little quote that Strickland pointed out. And I do think that that is very important to consider in this case. And the Strickland court said that there is an ultimate focus in every inquiry into ineffective assistance of counsel. And that is, the ultimate focus must be on the fundamental fairness of the proceeding whose result is being challenged. In every case, the court should be concerned with whether, despite strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown of the adversarial process that our system results. And that's what we're looking at here. Now, going to the facts of this particular case that Your Honor has mentioned earlier, there were four defense witnesses on behalf of Mr. Reagan, the appellant in this case, and there were two witnesses on behalf of the government. Now, out of all of those witnesses, not a single witness said that they did not see Mr. Reagan's trial counsel sleeping. The defense witnesses consist... Let me... I'm sorry to interrupt, but you're operating on the margin here, right? That's correct. There's no question they were sleeping more than once on separate occasions. Everybody saw it. The jurors, co-counsel, the judges even saw it, seems to me. The record... That sort of broke him up one time. That's correct, Your Honor. Okay. So how do you get from having to prove Strickland prejudice to the presumption of prejudice? Because frankly, it looks like the good judge got it wrong in that footnote when the judge says, even assuming there's prejudice, it's harmless. But we don't get to harmlessness, right? That's correct. This is a chronic case, not a Strickland case, if we presume prejudice. That's correct. If prejudice is presumed, then that clenches the 2255, right? That's correct, Your Honor. That's all you talk about. That's correct. Was there... Is there a presumption of prejudice? Government can't rebut that. A presumption of prejudice, right? That means there was a structural breakdown in the adversarial process. Yes. That's how I read the case. Yes. So I guess all of that is to say, the greatest deference we owe as a reviewing court to a district judge is the district judge's credibility determination. Correct. So my question to you is, can you make an argument to us... And frankly, I think you can, but I want to hear you make it. I don't want to make it. Can you make an argument that there's clear error here without having us trench on the district court's credibility determination? In other words, is your argument that there was clear error apart from the credibility determination that the district court apparently made? Yes, Your Honor, that's correct. And I think the main focus for that particular question has to do with the testimony of Pamela Vernon. Of? Pamela Vernon, who was a juror in the case. A juror. That's correct. Ms. Vernon got up there and testified that she was a juror throughout the entire trial. She sat across from where Mr. Mackey, his trial counsel, and Mr. Reagan were sitting. She was in his face for the whole of the trial. That's correct. And she was able to have a good view of them. And she testified that she saw Mr. Mackey, his trial counsel, sleeping every day, at least two times a day, and sometimes for as long as 30 minutes at a time. Now the district court, now this is also in determining her credibility, but the district court inserted certain facts that never came into evidence, or certainly not in the record. And I call them facts. They're not really facts because they weren't there, but it's just an easy way to refer to them. But those facts were that Ms. Vernon may have had sympathy for Mr. Reagan based on the length of a sentence. Now the problem with that is that there was never any evidence presented, nothing presented at the evidentiary hearing showing that Ms. Vernon had any sympathy towards Mr. Reagan for any reason, nor was there any evidence that Ms. Vernon was ever even told or even knew about the length of a sentence or anything more than that. So the judge was basing its determination and discounting her testimony based on the insertion of those facts that were just not there. Now when we determine whether or not – There was one more, though. I'm sorry, Your Honor? There was one more, wasn't there? Well, Your Honor, he also mentioned that she referred to Mr. Reagan by his first name. That was one more thing. Well, of course she wasn't credible. That's correct, because she referred to him by his first name. Well, that was his name. That was his name, Your Honor, and I should also point out that during the trial, if one looks at the trial transcript, he's commonly referred to by witnesses by his first name. So that is – His name was spoken, both names, in the court. That's correct. She would have heard that in court, so there's no even inference that she heard it at some other time before, or that would be the only way she would know it was said in court. That's correct, Your Honor. She heard that in court. Now obviously in court, judges and officers of the court – The judge didn't say the only way she could have heard it was outside of court. That's correct. He did not say that, Your Honor. He didn't say that. No. He just said he thought that that suggested she was sympathetic to him. That's correct, Your Honor. Let me back you up to a point about testifying on sleeping. I read the record pretty carefully, and I don't want to say it's not true, but I do think that, and in the long run it may not make much difference, but not everybody testified he was sleeping. Isn't that correct? Didn't some people say he had his eyes closed, and I don't know for sure if he was sleeping, but he looked sort of – but isn't that true? I do believe – one witness did not use the word sleeping, but I do believe every witness except for the trial counsel, who didn't answer whether or not he was sleeping – No, I'm not talking about him. I'm talking about everybody. That's correct. Everybody else said point blank he was sleeping. Everybody else, Your Honor, said that he was either sleeping or nodding off, Your Honor. The two other trial lawyers who testified said that they saw him sleeping. What about that one agent? I'm just going through it in my own mind. I thought some of them said, I can't say for sure he was sleeping, but he had his eyes closed. Am I not right on that? And what I want to say here is that – Isn't that the record? Your Honor, the – I'm sorry. Is the record that everybody you testified except for the lawyer himself said he was sleeping. That's not the record, is it? Your Honor, the agent said he was nodding off. He used those words. He said he was nodding off and not sure if he was outright sleeping. And then he also used language that he was struggling to stay awake. I thought other witnesses said he had his eyes closed for long periods of time. I wasn't sure he was sleeping. Ms. Vernon, Your Honor, who was the juror, when she was asked by the government, can you be sure, can you be certain that he was sleeping, she did answer that she could not be sure. But, you know, what we're asking for here is – She didn't hear any snoring. She didn't hear him snoring, and she's – That's what I'm just saying about her testimony. That's correct, Your Honor. I don't know in the long run if it's going to make any difference, but – Right. We'll let the government speak to that, too. She does not have a clinical diagnosis that he was sleeping, Your Honor. No, but I didn't – did I ask you that? No, Your Honor, just – Don't you think the average person knows what sleeping is? Don't you think a layperson can say that? I was just asking you what the record was. That's correct, Your Honor. I did want to point that out. Even the government's witness said he was nodding off or sleeping. It was nodding off or struggling to sleep. Even none of them said he was alert at any point. That's correct. Right. They could have possibly said, oh, yeah, I remember him. He was very alert. Even they said nodding. That's correct. The government's witness. That's right, Your Honor. And I should also point out that all of those witnesses, other than Ms. Vernon, also testified that they were focusing on the evidence. They were focusing on the witnesses or their clients. So they didn't have their attention drawn to his trial counsel during the entire time of this trial. So there was – I want you to understand, I wasn't asking that question to talk about what a reasonable inference is or a reasonable suggestion is from the overall record. I was asking a very technical question about what the exact testimony was in each instant, not what the overall impression was or maybe what a reasonable inference was, but if they all used the terminology. And I hear you say some said sleeping or nodding off. That's correct, Your Honor. I'm just telling you that I thought the record was a little more open on one or two people than that. That was just my point. Okay, Your Honor. And I'll ask the government about it. I wasn't saying that there was strong evidence he was sleeping. I just wondered if it was so clear that every single person said it, and that was just on my recollection of the record. That's correct, Your Honor. Thank you, Your Honor. So what we have here are multiple witnesses testifying as to his trial counsel sleeping, Ms. Vernon being the one who had a clear view of him, who testified to him sleeping on these many occasions. And the testimony of the others really corroborated her testimony more than anything. Again, none of them testified that he was alert. None of them testified that he was not sleeping. Would you have us – let's talk about what you would have us do. You would have us say that the district court was clearly erroneous, and you would have us determine, based on this record, that the defense counsel was sleeping for substantial portions of the trial. That's correct, Your Honor. That's what I would ask. I would ask that the court find that the evidence did show that his trial counsel was sleeping for substantial portions, and as such, presumption should be presumed, that the court was clearly erroneous in finding contrary to that and should have presumed prejudice, should have applied to him. What would you have us do with the footnote that Judge Davis talked about? The district court's view of what presumed prejudice means. You think that's wrong, don't you? You think that footnote's wrong. That's correct, Your Honor. Do we do anything with that or not? Well, Your Honor, if prejudice is presumed in this case under chronic, chronic does not address harmless or anything like that. It simply presumes that there is prejudice. No, no, no. I know what the law is. I think I do. I'm asking what would you have us make of the district court's view of what presumption means. Is that necessary at all for your argument? Your Honor, I guess it may be necessary. If I'm not mistaken, I believe that the footnote states something about prejudice would be harmless. No, he said if it's presumed, it's overcome in this case. I'm just asking. I don't know. You don't think that's necessary for your argument, do you? No, Your Honor. To address that footnote. No, Your Honor. Okay. Other than to say it's wrong. I'm sorry. Other than to say it's wrong. That's correct, Your Honor. That's correct. I see my time is up. So what I would ask the court to do is reverse the court's order. As I stated before, we cannot be confident in this particular case that Mr. Reagan received a fundamentally fair trial that produced just results. Thank you. Thank you. Mr. Miller? Good morning. May it please the court, William Miller on behalf of the United States. The district court did not err, let alone clearly err, in finding that the defendant's claim that his counsel slept through a substantial portion of the trial was wrong. Based on that finding, the court correctly declined to presume prejudice and applied the ordinary Strickland standard. The one key fact that the defendant failed to mention in talking about the court's finding in this case is that the defendant's initial allegation was that they were sleeping on two occasions. That's a critical fact that supports the district court's ultimate conclusion and it would basically, in my mind, support the finding in and of itself. When the defendant in his letter two months after court writes the court, provides a laundry list of complaints about defense counsel, he says defense counsel even had the audacity to fall asleep two times. Does that explain why the government made the decision that it didn't need to contact the other jurors? Because the juror witness was very clear in her testimony that this was a subject of discussion among the jury. And it seems to me that it would have been pretty easy for the government to go out and harvest the remaining jurors or a significant number of them to come in and say, oh, no, yeah, we saw him nodding off once or twice and we joked about it, but it was not a big deal. You didn't do that. And your sister in the earlier case, as you heard her, relied very heavily on what was not in the record. And it seems to me it would be perfectly appropriate for a reviewing court to take into account in assessing the weight of the evidence and applying the clearly erroneous test to say, well, we got this juror here who is given a fairly detailed narrative. She was in a position to see what she testified about. Yes, she may have been wrong on the 30 minutes, perhaps, on one occasion. But the government didn't even bring in any other jurors to refute what the juror who had an opportunity to see what she saw and to come in and testify. And I'm curious why he didn't. And so maybe that's why. You went into it perhaps thinking, oh, he only said it was twice, and therefore you look at the law and twice generally isn't going to do it for you. Is that sort of from 30,000 feet, is that what's going on? Two responses to that, Judge Davis. First, it's the defendant's burden in a post-conviction matter, unlike at a trial. So the government didn't have to call any witnesses. But you did. We did. You did. We did. And so my question is, having decided to call witnesses, why didn't you call other witnesses who had real information and that could have absolutely rebutted the testimony of a defense witness? Namely, that juror. And I was the AUSA who handled this at the district court as well. And so I can tell you that in my judgment, I read the letter. I spoke to trial counsel from all the trial counsel involved in the case. And my judgment was that that was sufficient. That was going to support the court's finding. And I think that what you have here is the defendant's credible allegation. And you didn't take any steps to prevent the defense from calling anybody they wanted to, did you? No, of course not. And I think it's important in this case that there have been, I think at the time of the hearing, seven years had elapsed since the time of trial. And so we're stuck, unfortunately, with that gap in time. But I think the key question here is, was the district court's conclusion that this was not substantial? That this occurred on a most – excuse me. Judge Davis' question, and you said you had a response to it. But in this case, there is evidence. And I don't know whether you have to get to it. In chronic, you don't get to prejudice at all, if it meets that standard. But you introduced in this case that there was evidence of prejudice. Because in your cross-examination of Ms. Vernon, you went beyond cross-examination. It was objected to by Mr. Pruden, but overruled. You went in because Mr. Pruden had all of his examination based on, appropriately, a fact witness, what she saw. But you opened the door to an interpretation of what happened in terms of deliberation with the other jurors. And you asked this question on 157 of the appendix. Question. During your deliberations, did you hold your observation of Mr. Mackey resting his head against his client, the defendant? Did you hold what you observed Mr. Mackey propping his head? Did you consider that in your verdict against the defendant? Answer. We discussed it, yes. They held it against the defendant. The next question there, Your Honor. I'm going to get to the next question. Yeah, but you opened the door. They held it against him. That's unrefuted. Then, I guess realizing you had opened that door, I guess your attempt to close it, but I think you left it ajar. You said, but was your verdict against the defendant were you able to follow the court's instruction? Yes, we were. That's not inconsistent. Yes, they could follow the instruction. Next question. Was that verdict based on the facts and evidence that you heard? Yes. But you didn't ask was it solely so. You had already determined it was held against him. That's in addition to you opened the door that they not only saw him sleeping, they discussed it among themselves in their deliberations, and they held it against the defendant. That's unrefuted. You put that in the record. Now, tell me where I'm wrong. Don't get anything about interpretation. Why didn't you put this in the record?  It was already part of the record, Your Honor. You enforced it. In her direct examination, she had said that it was something that the jurors had noted and discussed. Did they say they held it against him? No. You opened the door. And they said yes to it. And you didn't go into, well, what does hold against? You can't get every inference to your favor there when you open the door and say they held it against him. Did they mean the held against mean that the lawyer wasn't interested in the case maybe because he thought he was guilty anyway, and therefore it seemed like if he wasn't that interested, maybe he is guilty? We don't know because you opened the door, but you didn't clarify it further. You did that. Setting aside the door opening portion of the question, under Strickland, prejudice is something that the district court has to analyze. And here, the fact that the juror said that they did base their evidence on the facts and the evidence deprives the defendant of the ability to show, which is his burden, that there would have been a different outcome but for the error. That's the question. So you mean if a juror said in a case that, you know, in post-trial, it was some 2255 question that came up and they said whether or not it was prejudice or something, and the juror said, you know, yeah, we base it on the evidence, but, you know, we really didn't like the fact that he was Jewish or she was black or she was Asian. You mean that would be irrelevant? But still, based on the evidence, right, would that be an appropriate conclusion? I don't know. I mean, it could just as well be I didn't like her shoes or I didn't like his tie. We don't know because you opened the door, so we don't know. But we do know it was held against the defendant. I'm not aware. That's what it said. I'm not aware of any case where that's been sufficient to satisfy the prejudice prong under Strickland. The question is whether or not there would have been a different outcome but for the error. And here the juror affirmed that her verdict was based on the facts and evidence, and that's the critical question. Under Strickland, it's still the defendant's burden to show that if this unprofessional error had not happened, there would have been a different outcome in the case. And the fact that the jurors said we talked about this in the juror room, that does not satisfy that burden. And held it against them. I don't know that that's made that clear. But you wouldn't have decided if that was prejudice or not, would you? Wouldn't the court would have decided that? Weren't you just establishing the record so that if you had to argue prejudice, you would have the facts to argue whether or not prejudice occurred? As to all this, it didn't matter, it didn't matter, it was prejudice? That's not your determination. Wouldn't that be determination for the district court to make, reviewed by us? Correct. As to what those facts that you got out, whether or not that would amount to prejudice. That's not your determination, is it? No, it's not. And that is the reason why I asked the question, is once she said we talked about it, that's now out there and I felt it's something the court needed to hear about in order to address that point. Exactly. It's not your determination, but it's left to the record for the court. And that's how you abuse discretion, by ignoring what's in the record. And the district court didn't ignore that point. Did he address it? I believe, and I can pull up the order to confirm this, but I believe there's a footnote, or at least it's in the discussion of the facts. There is a reference to the fact that the juror said they followed the court's instructions. And I'm going off memory here, but I do believe that that's at least in a footnote in the court's order. So I don't know that that statement by Ms. Vernon is not sufficient to carry the burden under strictly. That wasn't a statement, that was a question. That was an answer. She answers. Her answer is not sufficient for the defendant to satisfy his burden. Well, how would you ever satisfy it then, for sleeping? For sleeping, there's two ways. One is if it affects a substantial portion of the trial. 30 minutes a day? That testimony was out of step with every other witness. Out of step? What do you mean out of step? She said that it happened morning and evening every day of the trial for up to 30 minutes at a time. And that other jurors discussed it because they're the ones that had a direct line looking at it. And the question's not is there another plausible interpretation of the evidence. Plausibility is direct evidence. Well, it's direct evidence. It wasn't objected to that she said other jurors saw the same thing she saw and discussed it. That's unrefuted. The district court just can't ignore it. In other words, there's no need of having an appellate court if we sit here and say, well, it's in the record. District court could just deny it, just ignore it. We just have to accept it. The district court didn't ignore it. He made a specific credibility determination as to the juror. He found that her testimony was inconsistent with the earliest allegation of the defendant of two occasions. But she had a better view than the defendant had. That's for the district court to sort out. And the question for this court is whether or not it will defer to the court's credibility determination. Oh, I agree. That is for us to determine whether we're going to defer to something, whether or not. And here, the defendant's initial allegation of this occurred on two occasions that was repeated in his sworn affidavit, which in and of itself provides an ample basis for the court's ultimate conclusion in this case. That two times allegation was corroborated by the testimony of all of the other impartial witnesses, including the two attorneys and the case agent who the government called to testify. And so there is ample evidence in this record to support the court's conclusion that this occurred on two occasions during a case involving 40 witnesses and three weeks of trial. You don't suggest to me, Mr. Miller, that it's Department of Justice policy that prejudice under Strickland and the requirement that the defendant show that, quote, confidence in the outcome equates to an innocent person got convicted. In other words, you're not suggesting that our analysis is a sufficiency of the evidence analysis, right? Certainly not. Even a guilty person, even an obviously guilty defendant in our system, is entitled to a fair trial that is consistent with the adversarial process, right? Absolutely. So if a lawyer is sleeping through an entire trial, you don't ask whether the defendant is guilty, right? If chronic kicks in, I'm not aware of a case where that presumption has been overcome. And so your position here, I take it again, I think I understand. Your position all along is that you never expected there to be a presumption of prejudice, and you don't believe this record supports a presumption of prejudice. That's correct. That's essentially the government's position. The government's position is, A, the district court had it right on the law. We're not going to presume prejudice unless it's substantial. Well, the district court clearly didn't have it right on the law in that footnote. You agree with that? I agree with that. So don't say the district court had it right on the law. It had it right as far as it mattered on the district court. The district court had it wrong in that footnote. So the district court clearly misunderstood the law. I'll ask you a question. No, the district court had it right on when a presumption came. He had it wrong in that footnote, which is a part of his legal analysis, right? Okay. So I think you've answered my question. You can go ahead to Judge Schen. But the point is here, if there's a presumption of prejudice, it doesn't matter how substantial the evidence was against the defendant. I think you agree with that. Right. I don't think there's any dispute among the parties as to when the presumption kicks in. And the district court's interpretation on when the presumption kicks in is consistent with the party's understanding, even as we stand here today. The issue is whether or not the court got it clearly wrong in applying that part of the standard. And what the court concluded there was that two occasions during this trial does not rise to the level of a substantial portion of the trial. If there were only two occasions. That's the clearly erroneous question. If there were only two occasions. Exactly. Absolutely. And my position here is that there's ample evidence to support the district court's conclusion on that piece. Not only the defendant's, as I've said, earliest allegation. But of course, the clearly erroneous test accommodates ample evidence. Let's not forget that a clearly erroneous analysis includes an assessment of the weight of the evidence. Now, we defer to credibility determinations 999 times out of 1,000. But you're not suggesting, I don't think, that an appellate court is powerless to assess the weight of the evidence in the analysis of a mixed question of fact and law. No, I'm not suggesting that. And I think the weight of the evidence supports the district court's conclusion here. You have the three impartial witnesses other than juror who all testified about one occasion, maybe a second occasion. You have the defendant's own allegation that it occurred two times. That's the weight of the evidence right there. The juror's testimony was the outlier evidence. The weight of the evidence includes the absence of the other jurors, Mr. Miller. It includes the absence of the other jurors. It includes what's not there. As you well know, as you argue to jurors and as standard instructions say, a jury is entitled to take into consideration what's there and what's not there in assessing the evidence. And I think that that comes back to the point I made earlier, which is the burdens on the defendant in this case. No question about that. You're right. You know, if it were a criminal trial, absolutely, that would be held against the government. But here are the burdens now on the defendant. Let's talk about exactly what your position is so we have it straight on the record and talk about what you did. We have to make a determination, but I think it's fair to talk about what you did. The law is not yet established in this circuit on substantial portions, correct? Correct. The district judge looking at the law applied substantial portions, correct? Yes, he did. Do you think the district judge made an error of law in saying, I am looking at substantial portion standard? That wasn't an error of law, was it? No, that was not. Was that an error of law for him to say, I believe you need to see substantial portions before the presumption kicks in? He wasn't wrong about that, was he? No, Your Honor. He was wrong about error of law, you suggest, as I think we all do, as to what that presumption means, if it kicks in, correct? No, listen to me now, answer my question. When he says the presumption, if it kicks in, is overcome, he'd be wrong about that, wouldn't he? Yes, under chronic, the chronic presumption. Well, what else is there? Right, exactly. And so the error here— So that, as to the law as he applied in this case, since he never found a presumption to kick in, there was no error of law in this case, in his legal analysis, was there? No, Your Honor. He did get the law wrong, we think, based on a footnote, but that's a mistake of the law. But that's not anything that's an error of law, as it in any way affects the analysis in this case, is it? No, and here's what I'll say about that. I'm not through asking you questions yet. Then, when you went in, is it correct, based on the record and what you know, you didn't know, first of all, for sure what the standard was going to be that the court was going to apply, because the fall asleep et al. are substantial portions. That's not established in this circuit yet, is it? It's not. No court has applied a per se rule. I think everyone had some idea, but no, it was not established. What case law in this circuit, the Fourth Circuit, established substantial portions of sleep? It wasn't established, no. Didn't I just ask you that? Right, and I was just adding that we looked at the other circuits. You know what? Answer a direct question directly. That wasn't yet established. So you didn't know for sure, there was no binding law on what standard had to be applied, correct? Correct. You addressed it looking at the possibility of that standard, if that met, or just the normal Strickland standard for prejudice, correct? Correct. So you took your judgment, and I don't think there's anything at all anybody could say anything was wrong with it. You tried to establish the government's position so the government would win, because you thought the government was right, under either standard, correct? Correct. Isn't that all you're arguing to us today? You may be wrong about that at some point, but that's all you've done, isn't it? That's right. And you thought you were at risk for the government if, in fact, you had to meet the normal Strickland standard, which it turns out you did. You thought you had to be able to address the question of prejudice to the court. Isn't that correct? Right, and that's ultimately what happened in this case, is the court did follow the normal Strickland prejudice analysis. One response to the footnote that we've talked a lot about, that is an alternative basis that the district court used to support its ultimate conclusion. And that's not an alternative basis that the government would rely on on this appeal. Our argument is that the district court got it right in declining to apply the presumption, and that it's an alternative basis if we get there, which the government says we don't get there. But you missed the point. At least you missed the point, I think, of all the questions we've been asking you and why you want to answer that question. The law embodied in that, you want to talk about it, so let's talk about it. Why you want to talk about it is beyond me for your side, but that footnote, doesn't that footnote embody an error of law? Yes. In this case, I think Judge Davis referenced it, we have to look at whether or not the court did an improper weighing of the evidence, don't we? Yes. And if that was improper, then that's grounds for reversal. If the court finds it. Yeah. And it seemed to me, and rightfully so, I guess that's the best thing you have, is that the best support is that because the defendant only referenced twice seeing him sleep, and because the people, other people, not the juror, other people you called and they called only referenced twice, I don't know how you get to that means that they saw him at the same time that the defendant saw him, but let's assume they did, that that means, oh, other people say it was two times. But how do you discount a juror who said she saw him sleep every day, morning and afternoon, and other jurors saw her, saw him do the same and they talked about it, and he does it so, and that's a person who we know physically had a better view of him than the defendant did, and he discounted her because he said, I think she's having remorse because he got a lot of time. Okay. That conclusion is not based on anything in the record. There's nothing in the record that says she even knew that. And the other reference about she called him by the first name, I don't know what that is. I really don't know what that is. To me that is nothing. But whatever that is, that's what I'm saying. How do you discount that incredible amount of evidence of proportion of time sleeping, consistently sleeping, to the point that it was held against them, they talked about it, and weighing that evidence just because the defendant said he only saw him twice. That has to be a horrible weighing of evidence, isn't it? Let's answer that part. That's the weighing of the mechanics of the weight. How do you discount it just because he only saw her twice, that evidence from the juror? Tell me that. It's not a mis-weighing of the evidence, Your Honor. It's not what? It's not a mis-weighing of the evidence. It's not? It's not an implausible alternative. It's not clearly wrong. It's not overcoming the deference. Go ahead. What is it? The other aspect that the district court specifically referenced is that no one, not the defendant, not the juror, ever brought this issue to his attention. That was his job. That was his job, wasn't it? Perhaps. But it's also an appropriate factor for the court to consider in analyzing the credibility of the witness. I'm really glad you mentioned that. In fact, have you thought about the fact, you know, Judge Shedd and I were district judges. And honestly, I'm a human being. Every judge is a human being. I can't imagine what would weigh on me heavier than as a 2255 judge looking at a record seven years old and it was my job as the presiding judge to make sure the lawyers weren't asleep. That's the judge's job. Now I've got seven years later, I've got the prospect of retrying this case because I and the U.S. attorney and the co-counsel failed to notice, take appropriate action to keep this lawyer awake. So are we entitled to consider that? You think? I think it cuts both ways. It cuts both ways. It just as likely bolsters his ultimate... I don't know what Judge Conrad saw or didn't see. Should... I think the fact that... Should the judge have recused and become a witness in this case? I don't think so, Your Honor. Wouldn't the judge have had the best view of what was going on in the courtroom as far as counsel's alertness? That may be true based on the position. I don't mean to suggest that the judge should have recused, but, you know, it's just... You say it cuts both ways, so at least you agree with me in part that human nature being what it is, very few of us would want to retry a case where we were arguably complicit in the failure of the adversarial process. I think the fact that the judge is the trial judge puts him in an even better position to assess the facts and the evidence. And you agree it puts pressure on that judge to weigh the evidence in a way that says, you know, this guy is really guilty, the evidence is overwhelming, you know, I'm going to make findings that... I don't have quite as dim a view of Judge Conrad as that... And it's not a view of Judge Conrad. That's exactly my point. That's why I mentioned Judge Shedd and Judge Davis. Wait a minute. Any human being. There's not a dim view of Judge Shedd either. There's no... Certainly not a dim view of Judge Shedd, but we're all human beings, and we all have common sense, and we all know about incentives and disincentives in the adjudication of cases. And I, for one, coming from a system where post-convictions were assigned to different judges in the state system in Maryland, and that's true about a lot of states, I celebrate the fact that in the federal system, the 2255s go back to the original judges. I think that celebrates in an appropriate way the ability of federal judges, like Judge Shedd, to dissociate his or her own personal views about things and to render fair and impartial judgments, even when they're reviewing what they themselves did. That's what 2255, that's what Congress has told us. That's what the Judicial Conference has told us. But there are cases that come along every now and then where you have to sit back and you say, well, wait a minute. If everybody's a human being, given the incentives and the disincentives at play here, I'm just not so sure. Frankly, if I were the trial judge, I would want searching review of this record where I denied relief, and I think most judges would, frankly. Let me say something, since we've gotten into that. I cannot fathom that as a district judge, or Judge Davis as a district judge, I cannot fathom. I know I wouldn't have done it. It matters to the determination of this case. And I guarantee you he wouldn't do it, would ever preside in a trial where the lawyer sleeps 30 minutes a day for 15 days or whatever. If we want to get into what way that matters, that simply is not believable to me. I don't fit that way into this case, but if we want to talk about it, and as far as whether or not he should be a fact witness, maybe that's something else. But you would have to cast aspersions on the district court who rules on this. You would have to say he either was completely incompetent, or he sat there and let somebody sleep, which is beyond fathomable to me. Let me just say this. It just is. And so I don't know how we get into that or not, but Judge Conrad sat there, and he knew. And by the way, Judge Conrad knew enough to know to call, ah, wake up, or whatever. He didn't say wake up, but he called his, shocked him, didn't he, called his attention. And by the way, I've been in trials where I've had to call some lawyer's attention to something because the lawyer's doing something. I'm not saying in this case now, but I'm saying the lawyer's doing something else. He's not paying attention. You've asked him for a response, or do you want to say something about that? You have to get his attention. You may have been in the spot yourself. That happens sometimes, but it's just not fathomable to me. Now, whether or not that factors into a weight of a fact, witness, and all, that a district judge sat there and saw that sleeping go on, and to defend himself, he goes, it didn't happen. It's just unbelievable. Judge Berger, I see I'm way past my time, but if I might just reference one other part. No, you really weren't. You weren't way past your time. Go ahead. Well, I'm happy to just conclude there as well. The one point I was going to point out is that there was a question asked about why didn't you bring it to the court's attention. That was asked of Andy Culler, who represented Tracy Howard, and he said after that one occasion, it wasn't a problem again, and he appeared to be alert. And so that does respond somewhat to your point, Judge Davis, and I just ask that this court affirm the factual findings of the district court. And lastly, it's interesting. I think this case can be decided whichever way it's decided without any ad hominem at all. I don't think it has to be an indictment on anybody. I think it's just a matter of what the law is what the law is, and we do it without fear or favor, and not ad hominem to anybody. But I think it's kind of ironic that when you asked that second question, that somehow we have to somehow discount with the jurors. I think it takes a lot of courage for the juror to come up and testify on the oath what she saw and that other people commented on. But the next follow-up question is interesting. We say it wasn't 30 minutes, and we discount that somehow. But when you said, but did you follow instructions? She said yes. Did you base it on evidence? Yes. Then that's supposed to be taken as true, isn't it? But that's the same person who one of the few people who swore in court that they would do this fairly are the ones who testified that we fairly saw the man sleeping. They're the ones that took the oath, and they're the ones we rely upon that they did follow the instructions. So they're telling the truth there, but not when it's 30 minutes. I think it's ironic. Thank you so much. Well, I note that you have some time, right? Thank you. You sure you want to take it? I just want to address just a few things very briefly. One of the last things that Mr. Miller mentioned was Mr. Culler's testimony about what happened after he noticed Mr. Mackey sleeping. I do believe that the record says that he didn't really pay much attention to Mr. Mackey after that. He was mostly focused on the evidence and his client. So I don't think that the record really shows that he saw Mr. Mackey being alert after that. He just didn't see what Mr. Mackey was doing one way or another. Mr. Miller also addressed Mr. Reagan's letter regarding two occasions where he slept. And, of course, the district court discounted Mr. Reagan's testimony. And we didn't spend any time arguing that, but that doesn't do anything to discount Mr. Vernon's testimony. And I think that's been the main focus. And I think that's where the court clearly erred in placing these facts in there to discount her testimony. Mr. Miller mentioned inconsistency between the attorney's testimony and Agent Taddeo's testimony, where they said they saw him sleep one or two times versus Ms. Vernon's testimony. I did address that before, but I just want to reiterate that they did not testify that he only slept twice. They testified that they only saw him sleep once or twice. But, again, they also testified that they were also focusing on their case. Again, they said he wasn't alert on those other occasions. And, finally, I just want to – well, two last things. Mr. Miller mentioned how Ms. Vernon still based the verdict on the facts and the evidence. But when it comes to presuming prejudice, that doesn't really matter, because the facts and the evidence that the jury sees, it's not contested from a sleeping lawyer. And the lawyer's not there to test that evidence or to challenge it. But that just goes to the argument of prejudice. Yeah, that's correct, Your Honor. You don't think you even get there, do you? That's correct, Your Honor. And, finally, with regard to bringing it to the court's attention that Mr. Mackey was sleeping, the government mentioned how none of the jurors or anyone else did that. And with regard to Mr. Reagan and the jurors, you know, they're sitting in court, and there's a judge who's very much an authority figure in front of them. And a lot of people might be very shy about actually speaking up and bringing something to the court's attention. So there could be many reasons for that. Again, Your Honors, I just want to thank you for taking the time to listen to this and want to once again conclude by saying that I think in this particular case we cannot say with confidence that Mr. Reagan received a fundamentally fair trial that produced just results, and as a result of that he's now serving a 30-year sentence. And I don't think we can sit here and feel good about what happened in this particular case when somebody is serving that kind of sentence. And you didn't mention it. I don't know if that was discretion or what, but you didn't mention about the other circuits, Ninth and Fifth Circuit, they're not binding precedent, but this case is stronger than those cases are. That's correct, Your Honor. The juror's testimony was very strong. Absolutely. And normally in this circuit, even though not binding, we always try to avoid circuit splits with a lot of families. That's correct, Your Honor. We give that a lot of credit. That's correct. Mr. Pruden, I'd like to ask you a question sort of outside the record. You're a member of the North Carolina Bar. Yes, sir. Who is the lawyer involved in this case? Nicholas Mackey, Nick Mackey, the defense lawyer, Your Honor, Nick Mackey. Mr. Mackey. Yes, sir. And the question would go to you, too, Mr. Miller. As a member of the North Carolina Bar, if this court were to find out that the lawyer did sleep for substantial portions, do you have an obligation to report him to the North Carolina Bar? That's a good question. You're asking that question, do you or don't you? I don't think so because I didn't witness it, Your Honor. But you're aware of a court finding. That's correct, Your Honor. But you don't think you'd have any obligation to say the Fourth Circuit found that Mr. Mackey slept, a member of this bar slept during substantial portions of the trial? You may be right about that. I would certainly look at the Code of Ethics, Your Honor. Let me ask, with your indulgence, I'd like to ask the government lawyer the same thing. What about that? I'd certainly have to look into it, Your Honor. As the government, we can't just report him to the North Carolina Bar unless we make sure we're right about it. Unless what? Unless we're sure that it is a reportable offense. I got you. But it would be a fact that if Mr. Pruden wins this case, it will be based on a determination, likely, that the lawyer, Mr. Mackey, slept for substantial portions of the trial, correct? Likely. And so you would just have to look and see if you'd have to report that. I think there would be an obligation in South Carolina, but I get the sense that the obligation in North Carolina may be slightly different. That's correct. Thank you for your indulgence. Your Honor, just so the Court is aware, he was, in fact, disciplined by the North Carolina Bar. I don't know if this was one of the reasons, but there were reasons. I think he might have had other reasons. That's correct, Your Honor. Thank you, Your Honor. Thank you so much. Mr. Pruden, I note also that you are a court opponent. I want to thank you on behalf of the Court for your invaluable service. We couldn't do it without your able assistance. You represent your client. And also, Mr. Miller, of course, to note your able representation of the United States.
judges: Roger L. Gregory, Dennis W. Shedd, Andre M. Davis